## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RONALD DURELLE AUSTIN,

    Petitioner,

    v.                           Civil Action No.:  JRR-22-461

WILLIAM S. BOHRER, WARDEN,

    Respondent.

## MEMORANDUM OPINION

    Ronald Durelle Austin brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, collaterally attacking his 2015 state conviction for first degree assault, conspiracy to commit first degree assault, and related firearms offenses.  ECF No. 1.  Respondent contends that several of Austin's claims are procedurally defaulted, prohibiting this Court from reaching the merits of those claims, and that his non-defaulted claims are without merit. ECF No. 8.  Austin has replied.  ECF No. 12.  The Petition is ready for resolution and no hearing is necessary.  *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).  For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

## I.      Background

### A. The Trial

    On July 26, 2012, Austin was indicted on charges of (1) first-degree murder; (2) first-degree assault; (3) use of a handgun in the commission of a crime of violence; (4) conspiracy to commit murder; (5) conspiracy to commit first-degree assault; (6) possession of a firearm after

having been convicted of a crime in another state; and (7) possession of a firearm after having been

convicted of a disqualifying crime.  ECF No. 8-1 at 11.

A jury trial was held from April 8, 2013 to April 12, 2013. ECF No. 8-1 at 9.  The Appellate

Court of Maryland summarized the facts adduced at trial as follows:

> In the early morning hours of June 9, 2007, Eric Jones was shot and killed outside
> his girlfriend's apartment located at 3832 Recency Parkway in Suitland, Maryland.
> Mr. Jones had arrived at the apartment at approximately 3:00 a.m. to speak with his
> girlfriend, Sabrina Steward-Rush. Mr. Jones had been attempting to contact Ms.
> Steward-Rush throughout the evening, but Ms. Steward-Rush had been avoiding
> Mr. Jones's telephone calls. Ms. Steward-Rush explained that she was unable to
> speak with Mr. Jones on the phone because she was spending time with her friend,
> Tracy Wright, whose husband had recently passed away.
>
> Ms. Steward-Rush lived in a basement-level apartment but was in Ms. Wright's
> second-floor apartment at the time. Mr. Jones knocked on Ms. Wright's apartment
> door and asked to speak with Ms. Steward-Rush. Ms. Steward-Rush agreed to talk
> with Mr. Jones. Ms. Wright asked Ms. Steward-Rush and Mr. Jones to step outside
> because their conversation was becoming heated. Mr. Jones and Ms. Steward-Rush
> walked outside of the apartment building and continued to engage in a heated
> conversation. While they were talking outside, a black male wearing a white shirt
> walked past them, entered the apartment building, and sat on the interior steps
> leading to the second level. Ms. Steward-Rush observed the black male in the white
> shirt sit on the interior steps through a glass entryway door. Ms. Steward-Rush
> observed that the man in the white shirt had shoulder-length dreadlocks, was
> drinking from a plastic cup, and appeared to be talking on a cell phone.
>
> At one point during the conversation between Ms. Steward-Rush and Mr. Jones,
> Ms. Wright came out of her apartment, said that she was going to bed, and held out
> Ms. Steward-Rush's purse and keys. Ms. Steward-Rush walked past the man in the
> white shirt on her way to Ms. Wright's doorway, where she took the purse and keys
> from Ms. Wright. When Ms. Steward-Rush turned to come back down the steps
> from Ms. Wright's apartment, she saw Mr. Jones outside the apartment talking to a
> man who was wearing a black shirt. The man in a black shirt had something
> covering his face and was holding a large black gun. Ms. Steward-Rush went back
> into the apartment to call 911, at which point the man in the white shirt who had
> previously been sitting on the steps said, "Excuse me, is that your man?" Ms.
> Steward-Rush looked back outside and observed that Mr. Jones and the individual
> in the black shirt had become engaged in a physical altercation. At one point, the
> man in the black shirt was on the ground and Mr. Jones continued fighting him.
> The man in the white shirt ran out of the building and began to assist the man in the
> black shirt against Mr. Jones. Ms. Steward-Rush began to scream and ran toward
> Ms. Wright's apartment. Ms. Wright pulled Ms. Steward-Rush into the apartment

Case 1:22-cv-00461-JRR   Document 13   Filed 05/20/24   Page 3 of 30

and quickly shut the door. Ms. Wright and Ms. Steward-Rush called the police. Three to five minutes after Ms. Steward-Rush entered Ms. Wright's apartment, multiple gunshots went off.

Air Force Sergeant Phillips Taylor, a neighbor in an adjacent apartment, observed the altercation through his window. Sergeant Taylor was home when the shooting occurred and saw the shooting take place. He testified at trial that he was playing video games when he heard a scuffle outside. Through his window, Sergeant Taylor observed one man dressed all in black and a second man in a white shirt fighting with Mr. Jones. Sergeant Taylor testified that the man in black appeared to have a black sawed-off shotgun and the man in white had a silver pistol. At one point during the altercation, Sergeant Taylor heard the man in the white shirt say, "Fuck it, I'm going to bust him." Mr. Jones pleaded for his life saying, "Man, don't bust me. Please don't." The man in the white shirt shot Mr. Jones with the silver pistol. Mr. Jones collapsed on the ground and the other two men fled in different directions. Sergeant Taylor testified that the man in black did not fire any shots.

Police arrived on the scene at 3:27 a.m., and Mr. Jones was pronounced dead at 4:22 a.m. An autopsy revealed that Mr. Jones was killed by a single gunshot wound to the chest. A .38 caliber bullet was recovered from Mr. Jones's body. Other evidence was recovered from the scene of the murder, including a silver Nokia cell phone, a clear plastic cup, a red lighter, multiple spent shell casings, and a piece of a grip from a handgun. A silver pendant with no chain and multiple spent shell casings were recovered from the area surrounding the crime scene. At trial, two witnesses identified the silver pendant as belonging to Mr. Jones. Both witnesses testified that Mr. Jones wore the pendant on a chain around his neck. The chain was never located or recovered. Various items recovered from the scene and the surrounding area were submitted for forensic examination.

Detective Bernard Nelson was the lead investigator assigned to the case. He investigated the silver Nokia cell phone which had been recovered from the scene of the murder. He downloaded the saved photographs and contact list from the phone, obtained subscriber information for the phone, and obtained numbers associated with various saved contacts. The phone was registered to Austin's grandmother, Rita Williams, and had been given to Austin by his aunt, Pamela Williams. At trial, both Pamela Williams and Austin's longtime girlfriend, Tersita Rogers, testified regarding the phone. They linked the phone to Austin based upon the photographs which were stored on the phone and contacts saved in the phone's contact list. Tersita Rogers testified that she remembered seeing many of the photos on the phone Austin carried in 2007.

On September 3, 2007, Austin's vehicle was stopped for a traffic violation. There were four passengers in the vehicle including two individuals named Jamaal Jackson and Kavell Thomas. After smelling the odor of marijuana, police removed the occupants and searched the vehicle. Police discovered two ballistic vest panels and two loaded .38 caliber silver handguns in the trunk of the vehicle. The handguns

were identical except that one was missing part of its grip. Austin was arrested and subsequently charged with possessing handguns, and Austin ultimately pled guilty to that offense.

Forensic examination linked the handgun that was not missing its grip to the September 1, 2007 robbery and murder of a pizza deliveryman in Washington, D.C. Jamaal Jackson and Kavell Thomas ultimately pled guilty in that case and DNA samples from each were collected and entered into a national DNA database. Five years later, Jamaal Jackson's DNA was matched to the sample which had been collected from the clear plastic cup recovered from the scene of Mr. Jones's murder. As a result, Jamaal Jackson was identified as the man in the white shirt who shot Mr. Jones on June 9, 2007.

In early 2012, Detective Nelson confirmed the DNA match between Jamaal Jackson and the sample which had been collected from the plastic cup. Detective Nelson knew that two people had been involved in Mr. Jones's murder but only knew the identity of one person. As Detective Nelson investigated Jamaal Jackson, he became aware of the September 2007 traffic stop that involved both Jackson and Austin, during which two handguns were recovered from the trunk of the vehicle. Detective Nelson submitted the handguns that had been recovered from the traffic stop for forensic testing. The testing revealed that the gun with the missing grip fired the .38 caliber bullet that had killed Mr. Jones. Furthermore, the grip piece that had been recovered from the murder scene was matched to the handgun with the missing grip.

As his investigation progressed, in July 2012, Detective Nelson met with Kahirima Gooby, a woman who had been dating Austin in June 2007. Ms. Gooby ultimately testified at trial. She testified that she remembered the early morning hours of June 9, 2007 clearly because it was the last time she saw Austin. In June 2007, Ms. Gooby resided in an apartment located at 3832 Regency Parkway, a short distance from the location where Mr. Jones was murdered. Ms. Gooby testified that she was asleep in her apartment when she was awakened by multiple gunshots outside her apartment. Austin called Ms. Gooby and told her that he was coming over to her apartment. Ms. Gooby testified that Austin told her that he and Jamaal Jackson "just came from the club, and that they had seen this man beating on this woman, and they didn't like it so they started beating the man up."

Austin arrived at Ms. Gooby's home shortly thereafter. Ms. Gooby testified that Austin looked like he had "just got[ten] into a fight," and that Austin was out of breath, sweating, and wearing a wrinkled shirt. She explained that, unlike that morning, Austin usually appeared well-dressed and "pretty clean cut." Ms. Gooby observed something that appeared to be "dirt, blood, something brownish on [Austin's] shirt." Ms. Gooby asked Austin to leave because she was concerned that the person Austin had been fighting might have followed him to her apartment. Austin was at Ms. Gooby's apartment for approximately five minutes. Ms. Gooby

never saw Austin again after that encounter. The first time Ms. Gooby spoke to police was in July 2012.

As a result of his investigation, Detective Nelson charged Austin and Jamaal Jackson with Eric Jones's murder.[1]

_____
[1]Kavell Thomas was ruled out as a suspect by Detective Nelson because his height did not match witnesses' descriptions. Witnesses had reported that the man in the white shirt—Jamaal Jackson—was taller than the man in the black shirt. Kavell Thomas was the same height as Jackson, so he was excluded as the man in the black shirt.

ECF No. 8-1 at 122-128.

The jury found Austin guilty of first-degree felony murder, conspiracy to commit first-degree assault, and the three firearms offenses. ECF No. 8-1 at 18.  He was acquitted of premeditated murder, specific intent second-degree murder, and conspiracy to commit first-degree murder.  *Id*. at 18, 128. Austin was sentenced on July 10, 2013 to: life imprisonment for felony murder; 20 years' incarceration, with all but 15 years suspended, to be served consecutively to Count 1 for using a handgun in the commission of a crime of violence (Count 3); 25 years' incarceration, to be served concurrently with his other sentences, for conspiracy to commit first-degree assault (Count 5); and 4 years' incarceration, to be served concurrently with his other sentences, for possessing a firearm after having been convicted of a disqualifying crime (Count 7).  ECF No. 8-1 at 19.  The first-degree assault conviction (Count 2) and the firearm possession conviction merged for sentencing purpose. *Id*. at 19.

## B.    Direct Appeal

Austin noted a direct appeal to the Appellate Court of Maryland raising three errors. Austin contended that the trial court erred by failing to instruct the jury as the elements of robbery or attempted robbery, the predicate felonies upon which the felony murder conviction was based.  He questioned whether there was sufficient evidence to support the first-degree felony murder

conviction and whether the trial court abused its discretion in admitting evidence regarding the ballistic vest panels recovered during the traffic stop. ECF No. 8-1 at 122.

On December 23, 2014, the Appellate Court of Maryland reversed Austin's felony-murder conviction after finding that the trial court erred in failing to instruct the jury as to the predicate felonies upon which Austin's felony murder conviction was based. *Id*. The court declined to address Austin's claims regarding the sufficiency of the evidence in light of the reversal of the felony murder conviction. *Id*. at 122, 141. The court held that the trial court did not abuse its discretion in admitting the ballistic vest panel evidence. *Id.* at 145-46. Austin's other convictions were affirmed. The court concluded that the other convictions were "unaffected by [the] finding of reversible error with respect to the felony murder conviction." *Id*. at 139. Because Austin's first-degree assault conviction merged into the felony murder conviction for sentencing, the Appellate Court of Maryland remanded for resentencing. *Id.* at 139-40, 146.

Austin filed a counselled Motion for Reconsideration on January 21, 2015. *Id*. at 147-50. Austin argued that the Appellate Court of Maryland failed to rule on his sufficiency of evidence claim and, because the State could elect to retry Austin for felony murder, the issue should be resolved on appeal. *Id*. The court denied the motion with its mandate issuing on January 26, 2015. *Id*. at 151-52.

### C. Proceedings on Remand

A resentencing hearing was held on April 30, 2015. ECF No. 8-1 at 21-22.  Austin was sentenced to 25 years' incarceration on the first-degree assault count, to be served consecutively to his conviction on other counts. *Id*. at 22.  As a result, his total term of confinement became 50 years' incarceration. *Id*. at 234-35.

On June 1, 2015, Austin filed a timely Motion for Reconsideration of Sentence pursuant to Md. Rule 4-345(e). ECF No. 8-1 at 156. On April 17, 2022, he filed a second motion requesting that the Court rule on his Md. Rule 4-345(e) motion. *Id*. at 331-42. Austin's motion was denied on June 29, 2020, and the order docketed on July 15, 2020. *Id.* at 330.

### D.      Second Direct Appeal

After resentencing, the State began preparation for a new trial on the murder charge. ECF No. 8-1 at 164.  Austin noted a second appeal, which was stayed pending resolution of the second trial. *Id*. at 22, 25.  Ultimately, the State entered a "stet" as to the murder count (*id*. at 25) and Austin's appeal then proceeded. *Id*. at 157-58.

In that appeal, Austin raised two claims: 1. the evidence was insufficient to support his conviction for conspiracy to commit first degree assault; and 2. the evidence was insufficient to sustain his conviction for possession of a regulated firearm after being convicted of a disqualifying crime. ECF No. 8-1 at 167. As to the second issue, Austin's sole argument concerned the lack of evidence regarding the length of the barrel of the weapon. *Id*. at 185-91.  The Appellate Court of Maryland concluded that Austin's claims were waived and foreclosed by the law of the case.  *Id*. at 232-41. The court's mandate issued on October 20, 2016. *Id*. at 242.

Austin filed a petition for writ of certiorari on October 21, 2016. *Id*. at 243-58. He asserted one question for review:

> Did the [Appellate Court of Maryland] err in dismissing Petitioner's appeal concluding impliedly [sic] that the illegal sentence review did not inhere from the sentence itself, and that evidence was insufficient to sustain the conviction for 1st degree assault, conspiracy to commit assault in the first degree, and possession of a regulated firearm, by a person convicted of a disqualifying crime?

ECF No. 8-1 at 247. The petition was denied on December 15, 2016. *Id.* at 259.

### E.      Postconviction Proceedings

Austin filed a counselled petition for postconviction relief on September 22, 2017. ECF

No. 8-1 at 260. Austin asserted thirteen claims:

(1) "The trial court failed to advise Petitioner of his right to be present at all court proceedings." ECF No. 8-1 at 266.

(2) "The Trial Court failed to give admonitions to the jury and the witnesses not to discuss the case after all recesses and after leaving the witness stand." *Id*. at 267.

(3) "The Trial Court erred in allowing the jury to have the gun used in the D.C. murder (State's exhibit #11)." *Id*. at 268.

(4) "The Trial Court erred when giving jury instructions on Petitioner's charge of possession of a firearm after being convicted under the laws of another state." *Id*. at 269.

(5) "The State erred in bringing to the Jury's attention evidence of two homicides not related to the case." *Id*. at 270.

(6) "The Court erred in allowing the State to admit into evidence Petitioner's prior traffic violations to show he had a history of driving the vehicle and relevant to show he was transporting the weapons found during the traffic stop." *Id*.

(7) "The State made improper comments in closing arguments, when he highlighted that Petitioner's friends Thomas and Jackson were murderers and armed robbers and when he vouched for a witness, Ms. Gooby. *Id*. at 271.

(8) "Defense Counsel failed to request a mistrial for the issue of jury intimidation or in the alternative failed to request removal of jurors #16 and #44."  *Id*. at 272.

(9) "Defense Counsel failed to object when Petitioner's prior [conviction] for attempted distribution of marijuana was brought to the jury's attention." *Id.* at 274.

(10) "Defense Counsel failed to object when the State had witness Kavell Thomas testify as to the D.C. murder." *Id*.

11) "Defense Counsel failed to request from the Court alibi instructions." *Id*. at 275.

(12) "Defense Counsel failed to object when the State mentioned Petitioner was jailed for 9-10 days." *Id*. at 276.

(13) "The cumulative effect of all the foregoing errors deprived him of a fair trial." *Id*. at 277.

The postconviction court held a hearing on February 7, 2019. ECF No. 8-1 at 10. The post-conviction court denied relief, by way of written opinion and order, on March 14, 2019. *Id*. at 27, 286-318.

Austin filed an application for leave to appeal the denial of post-conviction relief raising five claims:

(1) "Counsel's failure to object when [Austin's] prior convictions for attempted distribution of marijuana were introduced to the jury." *Id*. at 324.

(2) "Defense counsel failed to object when the State's Attorney ha[d] Kavell Thomas testify as to the D.C. murder case." *Id*. at 325.

(3) "Defense counsel failed to request the court give an alibi instruction to the jury." *Id*.

(4) "Defense counsel failed to object to the State's Attorney mentioning that [Austin] had been in jail 9 to 10 days." *Id*. at 326.

(5) The trial court erred in allowing the admission of [Austin's] traffic violations to show [Austin's] history of transporting firearms during traffic stop." *Id.*

The Appellate Court of Maryland summarily denied Austin's application on September 8, 2020. ECF No. 8-1 at 343-44. The court's mandate issued on October 8, 2020. *Id*. at 345.

### F.    Motions to Reopen

On October 21, 2020, Austin filed a motion to reopen his post-conviction proceedings. ECF No. 8-1 at 28. He claimed that: (1) his "handgun 'use' attendant to his conviction for first degree assault as an accomplice [was] invalid in light of *Rosemond v. United States*, 527 U.S. 65 (2014),'" which is retroactively applicable to Austin's case; and (2) postconviction counsel was ineffective for failing to allege ineffectiveness of trial counsel in "elicit[ing] prejudicial testimony of two unrelated homicides during cross-examination of the lead investigator." ECF No. 8-1 at 358-66, 369.  In support of his claims, Austin argued that he should be permitted to raise in a "successive" postconviction proceeding a "procedurally defaulted" claim of ineffective assistance

of counsel if he satisfied the federal habeas "cause and prejudice" exception by showing that postconviction counsel was ineffective. He cited *Martinez v. Ryan*, 566 U.S. 1 (2012), in support of this contention. *Id*. at 359, 365. The defaulted claim Austin wished to be considered was that trial counsel was ineffective because he "elicited prejudicial testimony of two unrelated homicides during cross-examination of the last investigator." *Id*. at 359.

On February 17, 2021, Austin's motion to reopen was denied, the court finding that it was "not in the interests of justice." *Id*. at 369-73.  In denying the motion, the court explained that *Rosemond* did not apply to Austin's case because it only applied to federal charges of aiding and abetting and use of a firearm in relation to a crime of violence in violation of 18 U.S.C.A. § 924(c). *Id*. at 371-72. The court further observed that the Appellate Court of Maryland had already determined, albeit in an unreported opinion, that *Rosemond* did not address a federal constitutional issue; instead it interpreted a federal statute, and therefore the heightened *mens rea* announced in *Rosemond* did not apply to Maryland law. *Id*. at 372. Additionally, the court found that, "although worded differently," Austin's claim that his trial counsel was ineffective for eliciting testimony about the two unrelated homicides was sufficiently raised and considered in his post-conviction proceeding. *Id*.

Austin noted both an appeal and a timely application for leave to appeal. ECF No. 8-1 at 374, 376.  He argued that the circuit court abused its discretion in denying his motion to reopen because *Rosemond* applied to his case, as his appeal was not "final" when the Supreme Court issued its decision and *Martinez* was retroactively applicable to his case on collateral review. *Id*. at 382-83. The Appellate Court of Maryland summarily denied Austin's application on August 31, 2021. *Id.* at 456-57. The court's mandate issued on October 1, 2021. *Id*. at 458.

Austin filed a second motion to reopen his post-conviction proceeding, which was docketed on June 2, 2021.[1] ECF No. 8-1 at 29, 386-400. He also filed an "Approved Successive Petition for Post Conviction Relief and Memorandum of Points and Authorities in Support." *Id*. at 29, 401-20. In these filings Austin argued that trial counsel was ineffective "when he stipulated to the name and nature of [Austin's] disqualifying prior felony conviction," contrary to the teachings of *Old Chief v. United States*, 519 U.S. 172 (1997), and *Carter v. State*, 374 Md. 693 (2003). *Id*. at 389. Additionally, Austin argued that his postconviction counsel was ineffective in failing to raise these claims in his initial post-conviction proceeding. *Id*. at 391.

The court denied Austin's motion on June 16, 2021, determining that it was "not in the interests of justice" to reopen his postconviction proceedings. *Id*. at 423-25. The court found Austin's ineffective assistance of counsel claims had already been considered and denied in his initial postconviction proceeding. *Id*. at 424.

Austin filed an application for leave to appeal (*id*. at 426-55), which was summarily denied by the Appellate Court of Maryland on November 4, 2021. *Id*. at 459-60. The court issued its mandate on December 9, 2021. *Id*. at 461.

### G. The Federal Petition

Austin filed his federal petition on February 24, 2022,  ECF No. 1. Three claims are before the Court:

I.    The state trial and appellate courts improperly admitted evidence of the name and nature of the prior conviction attempted distribution of marijuana which prohibited petitioner from possessing regulated firearms contrary to federal law as determined by the United States Supreme Court in Old Chief v. United States, 519 U.S. 172 (1997) where petitioner had the option of stipulating to the factual element of unlawfully possessing firearms by admitting fact of disqualifying conviction without the name and nature of  the conviction being

---

[1] Austin certified that he mailed the motion on May 24, 2021. *Id*. at 392.

told the jury which prohibited petitioner's possession of firearms requires petitioner's convictions and sentences be ordered vacated.

ECF No. 1-1 at 9.

II. Petitioner's trial counsel provided ineffective assistance when he stipulated, contrary to the holdings of <u>Old Chief v. United States</u>, 519 U.S. 172 (1997), to having the name and nature of petitioner's disqualifying prior conviction which prohibited him from possessing regulated firearms where <u>Old Chief</u> merely requires an offer to stipulate to admission of the fact of prior disqualifying conviction without disclosure to the jury the name and nature of the prior conviction and counsel's actions prejudiced petitioner requiring his convictions and sentences be ordered vacated at this time.

ECF 1-1 at 13; and

III. The Supreme Court's holdings in <u>Rosemond v. United States</u>, 572 U.S. 65 (2014), is applicable to petitioner's convictions for "use" of a handgun during and in relation to a crime of violence as well "possession" of firearms under the theory of vicarious liability and the state's trial and appellate courts rulings were contrary to clearly established federal law as determined by the supreme court in <u>Rosemond v. United States</u>.

ECF 1-1 at 20.

## II.   STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C.A. § 2254(a).  The federal habeas statute at 28 U.S.C.A. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal

court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## III.   PROCEDURAL DEFAULT

Procedural default of a claim occurs when the petitioner failed to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) (noting that "[w]hen a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619

(citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1(2012)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* MD. CODE ANN., CRIM. PROC. §§ 7-101–7-103. After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, no further review is available, and the claim is exhausted. MD. CODE ANN., CTS. & JUD. PROC. § 12-202. Maryland law does not permit a second and successive state petition for post-conviction relief. MD. CODE ANN., CRIM. PROC. § 7-103(a).

Before a federal court may consider a claim raised in a federal habeas petition, the petitioner must first present the claim in state court and pursue it at every stage of the state proceeding, whether through post-conviction or on direct appeal. *See Coleman*, 501 U.S. at 749–50 (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim in post-conviction petition); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post -conviction relief). Failure to do so renders the claim

procedurally defaulted, foreclosing federal habeas relief. *Mickens*, 240 F.3d at 356; *Breard*, 134 F.3d at 619.

Further, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts. *Picard v. Connor,* 404 U.S. 270, 275–78, (1971). Although the claims presented need not be "identical," *see Ramdass v. Angelone,* 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6, (1982) (per curiam). Presenting the "substance" of the claim requires that the claim "be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir. 1988)). In other words, fair presentation contemplates that "both the operative facts and the controlling legal principles must be presented to the state court." *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). The petitioner must present "both the operative facts and the controlling legal principles associated with each claim." *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021).

Even if a claim is procedurally defaulted, this Court may still address the claim if the petitioner provides sufficient "cause" for not raising the claim and "actual prejudice" resulting from the error. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 488).

Alternatively, the court may reach a defaulted claim to avoid a miscarriage of justice; that is, conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496; *Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Assertions of actual innocence used as a gateway to review an otherwise defaulted claim must be supported by new evidence that demonstrates no reasonable juror could have convicted the petitioner. *Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

### A. Claims I and II are procedurally defaulted

Respondents contend that Austin's first and second claims are procedurally defaulted. This Court agrees. The record demonstrates that Austin has not raised his ineffective assistance of counsel claim (Claim II) that relies on *Old Chief* and *Carter* in the appropriate state courts. Further, Austin failed to raise his claim of trial court error (Claim I) on direct appeal. Thus, these claims are procedurally defaulted.[2]

#### 1. Claim II – trial counsel error

Austin's Claim II – that trial counsel erred by stipulating to the basis of Austin's "prohibited person" status and that it be presented to the jury – is procedurally defaulted. The claim is procedurally defaulted for two reasons: Austin 1) failed to fairly present this claim to the state trial court and 2) failed to raise this claim in all available/appropriate state courts.

---

[2] Even if Austin's claims were not procedurally defaulted, they would not entitle him to relief. This Court gives "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C.A. § 2254(d)). Austin has made no such showing.

Preliminarily, contrary to Austin's assertions, *Old Chief* and *Carter* do not prohibit the admission of evidence of a prior conviction in a criminal-in-possession case. Instead, those cases hold that it can be an abuse of discretion to admit evidence of the name and nature of the prior conviction "when an admission [is] available," *i.e.*, when the defendant agrees to stipulate. *Old Chief*, 519 U.S. at 191-92; *see also Carter*, 374 Md. at 722 ("We hold that, when the defendant admits or the parties stipulate to the previous-conviction element," the trial court "should not describe the previous conviction with any more particularity[.]").

*Old Chief* and *Carter* hinge on an offer to stipulate to the existence of a prior disqualifying conviction. When such an offer of stipulation is made, the stipulation affects the court's weighing of the probative value versus prejudicial effect of the prior conviction evidence. *See Old Chief*, 519 U.S. at 184. The trial court must accept the stipulation, when requested by a defendant, that the defendant was convicted of a crime that qualifies under the criminal in possession statute. In those instances, the conviction does not need to be disclosed to the jury. *Old Chief* at 191-92; *Carter* at 720-21. Here, Austin contends that his trial attorney erred when he failed to seek a stipulation as to Austin's disqualifying conviction and instead stipulated to the name and nature of his prior conviction. ECF No. 1-1 at 13 (Claim II), 19. He also separately asserts that the court improperly admitted the name and nature of his prior conviction. ECF No. 1-1 at 9 (Claim I).

a. Claim II is unsupported factually

The record evidence does not support Austin's factual assertions regarding the treatment of his prior conviction at trial. The name and nature of his prior conviction was not read into the record as a stipulation. Instead, the information regarding Austin's prior conviction was presented to the jury, without objection, during the direct testimony of lead detective Nelson. Nelson was asked, during his direct examination, whether he had learned that Austin "had a prior criminal

conviction at the time of Mr. Jones' murder?" ECF No. 8-6 at 132. He answered in the affirmative and was then shown a probation order (Exhibit 81) and asked whether the order reflected the conviction he found. He, again, answered yes. *Id*. at 132-33. The exhibit was moved into evidence without objection. *Id*. at 133.  During cross-examination, trial counsel asked Nelson: "The conviction that the State, that you went and found about my client, Mr. Austin. The one [the prosecutor] showed you. What was that conviction for?" *Id*. at 150. Nelson responded, "I believe for possession of marijuana." *Id*.  On re-direct, Nelson clarified that the conviction was for "Attempted distribution of marijuana." *Id*. at 174. Again, no objection was noted. *Id*.

During its instruction of the jury, the trial judge explained the elements of the firearm offense. The court advised the jury that the defense had stipulated that Austin had been convicted in the District of Columbia of attempted distribution of a controlled dangerous substance which qualified as a felony in Maryland and that the defense stipulated that Austin had been convicted of a disqualifying crime. ECF No. 8-8 at 17. During closing arguments, the State argued that Austin had a prior conviction in the District of Columbia for attempted distribution of marijuana, and, for purposes of the charge of firearm possession, the District was a state and the conviction was a disqualifying crime. ECF No. 8-8 at 20-21. Defense counsel did not object. *Id*.

### b. Claim II was not raised at every level of state court review

In Austin's direct appeal, he did not pursue review of any *Old Chief* or *Carter* issue; nor did he raise a complaint regarding the failure to stipulate to the existence of a disqualifying conviction or the court's failure to accept such a stipulation in order that the name and nature of his conviction not be revealed to the jury.  ECF No. 8-1 at 37-38.

In his first post-conviction petition, Austin argued that the trial court erred in its instruction to the jury regarding the charge of possession of a firearm after having been convicted under the

law of another state, asserting that his "previous conviction in D.C. was a misdemeanor, however, by stating that it would be a felony in Maryland, the trial judge committed reversible error by transferring the rule of law from D.C. to Maryland." ECF No. 8-1 at 269.  In support of this argument, post-conviction counsel cited *Old Chief* and *Carter*, but counsel's arguments centered on the prejudicial nature of propensity evidence. *Id*. No argument was made regarding the parties' failure to stipulate to a disqualifying conviction; and counsel did not argue that the trial judge or prosecutor was prohibited from identifying the name and nature of Austin's prior conviction (because defense counsel offered to stipulate to Austin having a disqualifying conviction). Instead, post-conviction counsel argued that the trial court erred in instructing the jury that Austin had been convicted of a felony instead of a misdemeanor:

> Stating that if Petitioner had been convicted in Maryland it would be a felony is, of course, legally true, but factually erroneous since the conviction never happened in Maryland. This statement was irrelevant and prejudicial to the Petitioner since he was never previously convicted of a felony anywhere. However, that statement can cause the jury to put the Petitioner in a bad light and erroneously conclude that Petitioner is a felon and therefore guilty of the crimes charged.

*Id.* at 270.

> The post-conviction court rejected this claim:

> Petitioner's contention that this recital of the law was prejudicial is thus meritless. [The trial judge] correctly recited the law. That the D.C. charge would have been a felony in Maryland is a legal fact which directly applied to the elements of the charged offense. For this reason, counsels stipulated that the conviction would have been a felony under Maryland law, and [the trial judge] recited exactly that that [sic] while explaining this charge and the applicable law.

ECF No. 8-1 at 298-99.

Austin also alleged, in his first post-conviction petition, that trial counsel was ineffective because he "failed to make any objection claiming prejudicial evidence" when Austin's prior conviction for attempted distribution of marijuana was introduced by the prosecutor. *Id*. at 274.

Post-conviction counsel did not rely on *Old Chief* or *Carter* in arguing this claim; nor did post-conviction counsel argue that trial counsel should have stipulated to the conviction to avoid the name and nature of the conviction being presented to the jury. *Id*. Instead post-conviction counsel argued that the admission of the prior conviction should not have been permitted because it failed to prove Austin was guilty of the crimes charged and, given that Austin did not testify, this prior conviction could not have been used to impeach him. *Id*. Post-conviction counsel argued that "admission of this evidence was deficient and was definitely prejudicial to [Austin's] case in that it would cause the jury to erroneously conclude that since [Austin] committed the prior crime then he also committed the crimes charged." *Id*.

The post-conviction court rejected this claim:

Petitioner argues that he was prejudiced when the State introduced Exhibit #81, which was an earlier conviction of Petitioner.

\* \* \*

Relatedly, and as discussed in Discussion 4, Petitioner argued that he was prejudiced when [the trial judge] instructed the jury that Petitioner's prior conviction would have been a felony charged in Maryland. Although therein we discussed that Petitioner was not prejudiced because the recitation of the law was correct, we again discuss this to address Petitioner's argument that the exhibit, which proved the conviction, was prejudicially put into evidence.

\* \* \*

Per [the trial court's] instructions, that Petitioner had a prior conviction for a certain type of crime was directly relevant to the charged crimes. In fact, Defense Counsel and the State stipulated that the crime for which Petitioner was convicted, and which were raised by the State in the quoted sections above, directly applied to these two charged counts.

In balancing the probative versus prejudicial value of the conviction it is clear that the testimony and stipulation thereto were directly related to the charges in the instant case.[29] As such, Defense Counsel's objection to this information would have been inappropriate and Petitioner does not meet his burden.

_____

[29]Md. Rule 5-404(b) provides: "Evidence of other crimes, wrongs, or acts as defined by Code, Courts Article, 3-8A-01 is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

ECF No. 8-1 at 308-09.

In his application for leave to appeal the denial of postconviction relief, Austin alleged, among other things, that trial counsel "fail[ed] to object when [Austin's] prior conviction[] for attempted distribution of marijuana [was] introduced to the jury." ECF No. 8-1 at 324. In his application, Austin did not cite *Old Chief* or *Carter,* or rely on the principles of either, in arguing that his trial counsel was deficient. Additionally, Austin neither argued nor mentioned a stipulation (or lack of a stipulation) regarding his conviction. *Id*. The application was summarily denied. *Id.* at 343-44.

In his Motion to Reopen state post-conviction proceedings, Austin claimed that trial counsel was ineffective when he stipulated to the name and nature of Austin's prior disqualifying felony conviction contrary to the holdings in *Old Chief* and *Carter*. He also asserted that post-conviction counsel was ineffective for failing to raise this claim in his initial post-conviction petition. *Id*. at 390-91. In denying the motion to reopen, the court rejected Austin's claims finding that the claim that trial counsel was ineffective in acting contrary to the holdings in *Old Chief* and *Carter* had "already been considered and deemed meritless" by the post-conviction court. *Id.* at 424. The court relied on the post-conviction court's finding that Austin's "prior conviction for a certain type of crime was directly relevant to the charged crimes. . . .In balancing the probative versus prejudicial value of the conviction it is clear that the testimony and stipulation thereto were directly related to the charges. . . ." *Id*. The court then found that the claim that post-conviction

counsel was ineffective for not raising the claim was also meritless, because "the issue was raised in his initial petition for post-conviction relief." *Id*.

Austin filed an application for leave to appeal raising only one claim: that the circuit court abused its discretion in denying the motion to reopen where his "postconviction counsel procedurally defaulted a viable claim of ineffective assistance of counsel. . . ." *Id*. at 431. The application was summarily denied. *Id*. at 459-60. In view of the foregoing, it is clear that Austin failed to fairly present his Claim II (ineffective assistance of counsel relative to *Old Chief* and *Carter*) to each available state court; thus, the claim is procedurally defaulted. Specifically, Austin failed to present this claim in his application for leave to appeal the denial of his initial post-conviction petition and in his application for leave to appeal the denial of his motion to reopen post-conviction proceedings.

Importantly, "somewhat similar" claims are insufficient to demonstrate fair presentment. *Anderson*, 459 U.S. at 6. As discussed, in his first application for leave to appeal, Austin asserted that trial counsel erred in failing to object to introduction of his prior conviction under Maryland Rule 5-404. This argument differs materially from the argument Austin advanced in his federal petition: that trial counsel should not have allowed the jury to learn of the name and nature of his conviction because trial counsel should have stipulated to the prior disqualifying conviction and the admission of the name and nature of that conviction would have been barred under *Old Chief* and *Carter*. Austin cannot satisfy his burden of demonstrating fair presentment of this claim to each Maryland court authorized to hear it.

Additionally, while Austin did raise an ineffective assistance of counsel claim based on *Old Chief* and *Carter* in his Motion to Reopen, he did not raise that claim in his application for leave to appeal denial of that motion. Instead, Austin alleged that his post-conviction counsel,

not trial counsel, was ineffective and asserted that the state court abused its discretion by denying his requested relief. *Id*. at 431.

Given Austin's failure to present his *Old Chief/Carter* ineffective assistance of counsel claim to all state courts with jurisdiction to hear it, he has not properly exhausted this claim. There is no State corrective process now available to Austin on this issue. Accordingly, this claim is procedurally defaulted. *Gray*, 806 F.3d at 798 (holding that "when a habeas petitioner fails to exhaust state remedies for a claim, federal review is not available until the petitioner either returns to state court with the claim or demonstrates that such an attempt would be futile, in which case the claim is treated as procedurally defaulted.").

2. *Claim I – trial court and appellate court error*

Austin's Claim I, that the trial and appellate courts[3] violated *Old Chief* and *Carter* is also procedurally defaulted. Austin's claim that it was error for the court to admit evidence of the name and nature of his conviction arises out of his trial proceedings and as such should have been raised on direct appeal. Because Austin did not raise this claim of trial court error on his direct appeal, the claim is defaulted.[4]

---

[3] Austin contends that the appellate court erred in admitting evidence in violation of *Old Chief/Carter*. He is mistaken; appellate courts do not admit evidence except in rare circumstances not present here.

[4] Austin's claim of trial court error is also not cognizable because *Old Chief* interpreted probative value versus prejudicial effect as an evidentiary issue under Federal Rule of Evidence 403 and is, therefore, not binding on state courts. *See Primeau v. Eppinger*, No. 19-3200, 2019 WL 8219510 at *2 (6th Cir. Sept. 5, 2019) (holding "*Old Chief* did not interpret the Constitution, but the Federal Rules of Evidence, which do not apply to state criminal proceedings."); *Riggins v. Wolfe*, Civil Action No. PJM-12-930, 2013 WL 300838 at *9 (D. Md. Jan. 24, 2013) (holding "in *Old Chief*, the Supreme Court did not purport to clearly establish a constitutional rule binding on the states" therefore the state court's rejection of the claim was the application of state law and not subject to federal habeas review); *Middle v. Green*, Civil Action No. PWG-15-3333, 2016 WL 1600179 at *7, n. 7 (D. Md. Apr. 19, 2016) (finding "*Old Chief* did not purport to clearly establish a constitutional rule binding on the states"). While *Carter* established an *Old Chief* corollary under Maryland law, claims that a state court violated a state evidentiary law are not cognizable in federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

**B. Post-conviction counsel's alleged error is not cause to excuse the procedural default**

To the extent Austin claims that, because his post-conviction counsel defaulted his *Old Chief/Carter* claim, he is entitled to have this claim heard, the Court disagrees. Generally, errors of post-conviction counsel cannot serve as the basis for cause to excuse a procedural bar of a petitioner's claim. *Coleman*, 501 U.S. at 752. However, a "narrow exception" to "the constitutional rule that there is no right to counsel in collateral proceedings," has been recognized: the inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)*.* The *Martinez* Court reasoned that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim" and such collateral proceedings are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance [of counsel] claim." *Id.* at 10-11.

A federal habeas court may find "cause" and excuse a defendant's procedural default, where: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective assistance of trial counsel claim"' and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial review collateral proceeding." *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) ( citing *Martinez*, 132 S.Ct. at 1318-19, 1320-21); *see also Sexton v. Cozner*, 679 F. 3d 1150, 1159 (9th Cir. 2012) (finding *Martinez* requires "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective. . . whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

Here, the third and fourth *Trevino* elements are satisfied because Maryland law provides that claims of ineffective assistance of trial counsel should generally be raised on collateral review. *Mosley v. State*, 378 Md. 548, 572-73 (2003).

To excuse the procedural default of a claim by post-conviction counsel, Austin must demonstrates "that initial postconviction counsel performed deficiently, under the first prong of *Strickland*,[5] by failing to exhaust the underlying effective assistance of trial counsel claim, but not that said counsel's deficient performance was prejudicial, under the second prong of *Strickland. . . .*" *Owens v. Stirling*, 967 F. 3d 396, 423 (4th Cir. 2020). To establish cause to excuse the procedural default of the underlying ineffective assistance of trial counsel claim, Austin must demonstrate "(1) that the underlying claim is substantial and (2) that initial Postconviction Counsel's failure to raise it was deficient." *Id*. A claim is "substantial" if it "has some merit." *Martinez*, 56 U.S. at 14; *see Owens*, 967 at 424 (providing that "[i]f reasonable jurists could debate the merits of the underlying claim, then it must have (at least) some merit.").

The record before this Court does not establish that postconviction counsel was deficient and Austin may not make that record for the first time here. Federal district courts are prohibited from considering evidence not included in the state court record, even if the petitioner's post-conviction counsel was ineffective for failing to raise and develop the claim. *Shinn v. Ramirez*, 596 U.S. 366 (2022). The record before the Court instead weighs in favor of a finding that post-conviction counsel acted reasonably. Decisions regarding what issues to pursue on appeal or in a postconviction petition are "quintessentially [] tactical decision[s] of counsel." *Oken v. State*, 343

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part standard for demonstrating ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Second, the defendant must show that "the deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id*.

Md. 256, 271 (1996). Moreover, it is axiomatic that counsel does not have a constitutional duty to raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983); *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Nor can Austin demonstrate prejudice (*i.e.,* a substantial probability of success had postconviction counsel raised the *Old Chief/Carter* ineffective assistance of trial counsel argument). This is particularly true where, as here, the post-conviction court rejected related claims regarding trial court error and trial counsel error as to the admission of Exhibit 81, which revealed the name and nature of Austin's disqualifying conviction. Additionally, other testimony was introduced at trial that Austin had been arrested while possessing marijuana and other drug-related contraband. ECF No. 8-6 at 48-57. Lastly, there is no evidence before the Court, and no reasonable inference can be made, that suppressing the name and nature of Austin's prior conviction for attempted marijuana distribution might reasonably have convinced the jury that he did not participate in the assault and conspiracy to commit the assault for which he was charged. For all these reasons, based on the record before the Court, the Court does not find a substantial probability that the jury would have acquitted Austin of assault, conspiracy, and/or the firearm charge had the name and nature of his prior conviction been withheld from the jury.

In short, Austin cannot satisfy the "cause" requirement to excuse his procedural default through the *Martinez* exception. Austin has not advanced any reason why he was prevented from raising the arguments throughout his state processes or that the claimed errors prejudiced him. Finally, Austin has not given this Court any basis to find that a fundamental miscarriage of justice would result absent reaching the defaulted claims. While Austin generally maintains his innocence, he has not marshaled evidence of same. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995). Austin's first and second claims are procedurally defaulted.

## IV.   ANALYSIS NON-DEFAULTED CLAIM

Respondents contend that Austin's claim that the decision in *Rosemond* invalidated his conviction for use of a handgun (Claim III) is meritless and not cognizable. The Court agrees.

Austin asserts that his conviction for use of a handgun in a crime of violence violates *Rosemond v. United States,* 572 U.S. 65 (2014), because "a new heightened mens rea and actus reus burden of proof" was announced in *Rosemond* where a defendant is charged with "'use' and/or 'possession' of a firearm during and in relation to a drug trafficking crime or a crime of violence, but the government is relying on a theory of vicarious liability." ECF No. 1-1 at 24.  He maintains that *Rosemond* requires the state prove that the defendant had "advance knowledge of the full scope and elements of the target offense," "advance knowledge that a confederate will use or carry a gun during [its] commission, and that defendant, upon learning these requisite facts had a reasonable opportunity to opt out and walk away from the criminal venture." *Id*. at 24-25. Additionally, Austin contends that this heightened standard is applicable to both "state and federal prosecutors" and puts an "obligation on federal and state courts" to make sure juries are properly instructed. *Id*. at 25. In his view, *Rosemond* is binding on Maryland courts because the holding addresses constitutional issues. *Id*. at 26-27. Lastly, Austin contends that the post-conviction court improperly relied on the unreported decision in *Lynch v. State,* No. 1081, Sept. Term, 2015, 2016 WL 4062804 (Md. App. Ct. July 26, 2016), which rejected application of *Rosemond* to prosecutions under state law because, in his view, *Lynch* was factually distinguishable from his case. *Id*. at 26.

The Court agrees with Respondents that this claim is not cognizable on federal habeas review. The *Rosemond* Court clarified the interaction between aiding and abetting liability under 18 U.S.C.A. § 2 and the firearms offense in 18 U.S.C.A. § 924(c) and, as such, is an interpretation

of federal statutes. Courts have uniformly found that *Rosemond* was not based on the United States Constitution and therefore in not binding on state courts. *See Hughes v. Epps*, 561 F. App'x 350, 354 n.4 (5th Cir. 2014) (holding § 2254 petition not controlled by *Rosemond* because *Rosemond* "arose under federal law, not Mississippi law."'); *Flowers v. Sec'y,* No. 5:18-CV-315-TPB-PRL, 2021 WL 4148280, at *6 (M.D. Fla. Sept. 13, 2021) (holding *Rosemond* "inapplicable to petitioner's state conviction for principal to a robbery with a firearm. . ." because *Rosemond* does not rest on a constitutional requirement and is not applicable to state laws on accomplice liability: therefore the claim was not cognizable); *Delgado v. Kernan*, No. 218CV01698KJMCKD, 2019 WL 2576555, at *5 n. 4 (E.D. Cal. June 24, 2019) (holding *Rosemond* inapplicable because petitioner was not convicted under federal statute); *see also State v. White*, 283 A.3d 542 (Conn. App. Ct. 2022), *cert. denied*, 291 A.3d 108 (Conn. 2023) (holding *Rosemond* does not extend to interpretation of state criminal statute); *Whitaker v. State*, 199 A.3d 1021 (R.I. 2019) (holding *Rosemond* does not create new constitutional rule warranting postconviction review of state convictions); *Hicks v. State*, 759 S.E.2d 509, 514–15 n.3 (Ga. 2014) (holding *Rosemond* "arose under federal law" and was not applicable to review of state conviction); *State v. Ward*, 473 S.W.3d 686, 693 (Mo. Ct. App. 2015) (holding *Rosemond* did not rest on constitutional requirement and has no application to state criminal laws on accomplice liability).

In light of the foregoing, Austin's contention that the state court erred in its failure to follow *Rosemond* is unavailing. *Rosemond* is not binding on the states. Therefore Austin's claim is not cognizable and otherwise lacks substantive merit.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2); *Buck v. Davis*, 580 U.S. 100, 115 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115. (citation omitted). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Austin has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Austin may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied. A separate Order follows.


/S/

May 20, 2024
  _____
  Julie R. Rubin
  United States District Judge

30